# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCRIPPS HEALTH, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NTHRIVE REVENUE SYSTEMS, LLC, formerly known as Medassets Analytical Systems, LLC, a Delaware limited liability company; NTHRIVE, INC., doing business as nThrive Revenue Systems, LLC, a Delaware corporation; and FORMATIV HEALTH, a Delaware limited liability company,<br><br>Defendants. | Case No.: 19-cv-00760-H-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND**<br><br>[Doc. Nos. 95, 98.]<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 107.] |

///

///

///

On March 18, 2021, Defendants nThrive Revenue Systems, LLC and nThrive, Inc. (collectively "nThrive") filed a motion for summary judgment. (Doc. No. 95.) On March 18, 2021, Defendant Formativ Health filed a notice of joinder in nThrive's motion for summary judgment.[1] (Doc. No. 98.) On March 19, 2021, Plaintiff Scripps Health filed a motion for summary judgment. (Doc. No. 107.) On April 9, 2021, the parties each filed their respective responses in opposition to the motions for summary judgment. (Doc. Nos. 134, 137, 139.) On April 16, 2021, the parties each filed their respective replies. (Doc. Nos. 140, 144, 149.)

The Court held a hearing on the matter on May 17, 2021. Jeffrey D. Cawdrey and Kimberly D. Howatt appeared for Plaintiff Scripps Health. John Shaeffer and Joshua A. Bornstein appeared for Defendant nThrive. Marty B. Ready appeared for Defendant Formativ. For the reasons below, the Court grants in part and denies in part Defendants' motion for summary judgment, and the Court denies Plaintiff Scripps Health's motion for summary judgment.

## Background

Plaintiff Scripps Health is a nonprofit health care system with four hospitals and twenty-eight outpatient facilities. (Doc. No. 124-2 at 1 ¶¶ 1-2; Doc. No. 132-1, Thomas Decl. ¶ 2.) Defendant nThrive is a Revenue Cycle Management ("RCM") vendor.[2] (Doc. No. 124-2 at 1-2 ¶ 3.) RCM services include coding, billing, and collections of accounts receivables for health care organizations. (Id.)

On December 22, 2011, Scripps Health and nThrive entered into an agreement entitled "Master Agreement Between Scripps Health and MedAssets Net Revenue

---

[1]    The Court denies Scripps Health's challenges to Formativ's notice of joinder. (See Doc. No. 134 at 1-5.)

[2]    Defendants nThrive LLC and nThrive Inc. claim to be parties to and hold rights in the relevant contract. (Doc. No. 124-2, at 2 ¶ 4.)

Systems, LLC."[3]  (Doc. No. 124-4, Ex. 4.)  On September 25, 2017, Scripps Health and nThrive entered into a further agreement entitled "Third Amendment to the Master Agreement Between Scripps Health and nThrive Revenue Systems, LLC." (Doc. No. 124-4, Ex. 3.)

On April 24, 2019, Scripps Health filed a complaint against nThrive and Formativ, alleging claims for: (1) fraud and deceit; (2) negligent misrepresentation; (3) aiding and abetting fraud; (4) conspiracy to commit fraud; (5) intentional interference with contractual relations; (6) intentional interference with prospective economic advantage; (7) breach of contract; (8) breach of the covenant of good faith and fair dealing; (9) negligence; (10) unjust enrichment; (11) demand for accounting; and (12) unfair business practices in violation of California Business and Professions Code § 17200 *et seq*.  (Doc. No. 1, Compl.)  Scripps Health alleges that nThrive did not perform the services required under the agreement in accordance with contractual or industry standards.  (Id. ¶ 39.)  Scripps Health further alleges, among other things, that nThrive "secretly and surreptitiously assigned, subcontracted, and/or delegated" some or all of its obligations under the agreement to third-party Formativ, despite the inclusion of an anti-assignment clause in the agreement.  (Id. ¶¶ 42-44.)

On June 28, 2019, Formativ filed an answer to the complaint.  (Doc. No. 8.)  On July 1, 2019, nThrive filed an answer to the complaint and counterclaims against Scripps Health, alleging counterclaims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligent misrepresentation; and (4) unjust enrichment.  (Doc. Nos. 11, 12.)  On July 22, 2019, Scripps Health filed a partial motion to dismiss nThrive's counterclaims.  (Doc. No. 23.)  On September 3, 2019, the Court granted in part and denied in part Scripps Health's motion to dismiss.  (Doc. No. 35.)

---

[3]    Although the December 22, 2011 Master Agreement was originally entered into between Scripps Health and MedAssets Net Revenue Systems, LLC.  (Doc. No. 124-4, Ex. 4.)  In 2015, nThrive was formed through the merger of several RCM vendors, including MedAssets.  (Doc. No. 137 at 4 (citing Doc. No. 124-4, Ex. 12 at 38).)  The parties agree that nThrive is a party to the December 22, 2011 Master Agreement.  (See Doc. No. 116 at 1, 6; Doc. No. 107-1 at 3; see also Doc. No. 124-4, Ex. 3 at 1.)

Specifically, the Court dismissed nThrive's counterclaim for negligent misrepresentation without prejudice and with leave to amend, and the Court denied the remainder of Scripps Health's motion to dismiss.  (Id. at 9.)

On October 3, 2019, nThrive filed first amended counterclaims, alleging the same four counterclaims.  (Doc. No. 40.)  On November 13, 2019, the Court granted Scripps Health's partial motion to dismiss, and the Court dismissed nThrive's counterclaim for negligent misrepresentation with prejudice.  (Doc. No. 50 at 7.)  On May 10, 2021, the Court denied the parties' Daubert motions without prejudice.  (Doc. No. 162.)

By the present motions for summary judgment: (1) Defendant nThrive moves for summary judgment of all ten of the claims in Scripps Health's complaint asserted against nThrive; (2) Defendant Formativ joins in nThrive's motion and separately moves for summary judgment of the claims in Scripps Health's complaint that are asserted against Formativ only; and (3) Scripps Health moves for summary judgment of all three of nThrive's remaining counterclaims.  (Doc. No. 116 at 1-2; Doc. No. 98 at 4-5; Doc. No. 107-1 at 1-2.)

## DISCUSSION

### I.    Legal Standards for a Motion for Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial.  Id. at 322-23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015).  Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007).  To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings."  Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings.").  Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor."  Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007).  The court should not weigh the evidence or make credibility determinations.  See Anderson, 477 U.S. at 255.  "The evidence of the non-movant is to be believed."  Id.  Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

///

///

///

## II.   Analysis

By the present motions for summary judgment, Defendants move for summary judgment of all of Scripps Health's claims in its complaint, and Scripps Health moves for summary judgment of all of nThrive's remaining counterclaims.  Specifically, Defendant nThrive moves for summary judgment of Scripps Health's claims for: (1) fraud and deceit; (2) negligent misrepresentation; (3) conspiracy to commit fraud; (4) intentional interference with prospective economic advantage; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; (7) negligence; (8) unjust enrichment; (9) demand for accounting; and (10) unfair business practices in violation of California's UCL.  (Doc. No. 116 at 1-2.)   Formativ joins nThrive's motion for summary judgment and also separately moves for summary judgment of Scripps Health's claims for aiding and abetting fraud and intentional interference with contractual relations.  (Doc. No. 98 at 4.)  Scripps Health specifically moves for summary judgment of nThrive's counterclaims for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) unjust enrichment.  (Doc. No. 107-1 at 1-2.)  The Court addresses the parties' arguments regarding each of these claims in turn below.

### A.   Scripps Health's Damages

As an initial matter, nThrive argues that it is entitled to summary judgment of Scripps Health's claims for breach of contract and breach of the covenant of good faith and fair dealing and all of its tort claims because Scripps Health is unable to establish damages as a matter of law.  (Doc. No. 116 at 16-18.)  Under California law, "[f]or the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."  Cal. Civ. Code § 3300.  "For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."  Cal. Civ. Code § 3333.

"'Contract damages are generally limited to those within the contemplation of the

parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectation of the parties are not recoverable.'" Erlich v. Menezes, 21 Cal. 4th 543, 550 (1999); see also Copenbarger v. Morris Cerullo World Evangelism, Inc., 29 Cal. App. 5th 1, 9 (2018) ("Contract damages seek to approximate the agreed-upon performance.  [I]n the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance."). "'In contrast, tort damages are awarded to [fully] compensate the victim for [all] injury suffered.'"  Erlich, 21 Cal. 4th at 550.  "There is no fixed rule for the measure of tort damages under Civil Code section 3333."  Santa Barbara Pistachio Ranch v. Chowchilla Water Dist., 88 Cal. App. 4th 439, 446 (2001).  The amount of damages to be awarded is a question of fact.  Madani v. Rabinowitz, 45 Cal. App. 5th 602, 610 (2020); Westphal v. Wal-Mart Stores, Inc., 68 Cal. App. 4th 1071, 1078 (1998).

nThrive argues that Scripps Health cannot prove damages in this action as a matter of law because the only damages theory Scripps Health proffers is the difference between what could have been collected on the Legacy accounts receivables and what actually was collected including the costs associated with the collection efforts.  (Doc. No. 116 at 16.) nThrive argues that the evidence in the record is insufficient as a matter of law to support this theory of damages.  (Id. at 17-18.)  In response, Scripps Health disputes this characterization of its claims for damages.  (Doc. No. 139 at 23-24.)

Nevertheless, even assuming nThrive's characterization of Scripps Health's theory of damages is true, there is sufficient evidence in the record to create triable issues of fact as to Scripps Health's claims of damages.  (See, e.g., Doc. No. 132-2, Bergmark Decl. ¶¶ 5-26; Doc. No. 132-22, Exs. 72, 75-77; Doc. No. 127-11, Ex. 43 at 23-24, 33, Exs. 73-74.) The Court rejects nThrive's assertion that the evidence at issue is too speculative to allow a reasonable trier of fact to award damages.  See Sargon Enterprises, Inc. v. Univ. of S. California, 55 Cal. 4th 747, 774 (2012).  As such, the Court declines to grant summary judgment on the issue of Scripps Health's damages.

///

1
2

   B.   Scripps Health's Claims for Fraud and Deceit and Negligent Misrepresentation

3
4
5
6
7
8
9
10
11
12
13
14

   Defendants argue that the Court should grant summary judgment of Scripps Health's claims for fraud and negligent misrepresentation because the claims fail as a matter of law. (Doc. No. 116 at 18-21.) "'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" Lazar v. Superior Ct., 12 Cal. 4th 631, 638 (1996); accord Geraghty v. Shalizi, 8 Cal. App. 5th 593, 597 (2017). "'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." Lazar, 12 Cal. 4th at 638. "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." Id.

15
16
17
18
19
20
21
22

   "The elements of a cause of action for fraud and a cause of action for negligent misrepresentation are very similar . . . . [B]oth torts are defined as deceit. However, the state of mind requirements are different.'" Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1055 (9th Cir. 2008) (quoting Intrieri v. Superior Court, 117 Cal. App. 4th 72, 85 (2004)). "'Negligent misrepresentation lacks the element of intent to deceive. Therefore, where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.'" Id. (quoting Intrieri, 117 Cal. App. 4th at 86).

23
24
25
26
27
28

   In response to nThrive's motion for summary judgment, Scripps Health focuses on its assertion that nThrive's $8.352 million collection projection during the RFP process was fraudulent. (Doc. No. 139 at 11, 16-18.) Cf. OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp., 157 Cal. App. 4th 835, 854 (2007) ("A single material misrepresentation may establish the tort."). nThrive argues that this is insufficient to support a claim for fraud as a matter of law because such a valuation is an opinion and not

an actionable misstatement of fact.  (Doc. No. 116 at 19.)

"Representations of opinion, particularly involving matters of value, are ordinarily not actionable representations of fact."  Graham v. Bank of Am., N.A., 226 Cal. App. 4th 594, 606 (2014); see also Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells, 86 Cal. App. 4th 303, 308 (2000) ("The law is quite clear that expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action.").  Nevertheless, the California Supreme Court has explained:

> Under certain circumstances, expressions of professional opinion are treated as representations of fact.  When a statement, although in the form of an opinion, is "not a casual expression of belief" but "a deliberate affirmation of the matters stated," it may be regarded as a positive assertion of fact.  Moreover, when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact.

Bily v. Arthur Young & Co., 3 Cal. 4th 370, 408 (1992) (citations omitted) (quoting Gagne v. Bertran, 43 Cal. 2d 481, 489 (1954)).

To support its claim for fraud against nThrive, Scripps Health cites to evidence showing that nThrive represented that, based on its calculations, it estimated that it could collect "$8,352,000 roughly."  (Doc. No. 132-21, Ex. 69.)  Scripps Health has cited to evidence in record from the relevant agent stating that he was not qualified to provide this estimate, it was not his calculation, and the origins of the calculation are unclear.  (See Doc. No. 127-11, Ex. 15 at 34, 145, Ex. 40 at 101, Ex. 42 at 106-08.)  Scripps Health has provided additional evidence showing that nThrive made this representation despite Formativ appearing to estimate collections of $4.25 million.  (See Doc. No. 127-11, Ex. 70 (September 7, 2017 email entitled "Re: FW: Additional Data For nThrive"); see also id., Ex. 26 at 135, 221-22.)  This evidence is sufficient to create a triable issue of fact as to

9

Scripps Health's claims for fraud and negligent misrepresentation against nThrive.[4]  See, e.g., Anderson v. Deloitte & Touche, 56 Cal. App. 4th 1468, 1477 (1997) (finding a triable issue of fact concerning the reliability of an opinion provided in a report and explaining "[i]f the acts or conduct of a professional accountant performed in preparation for an audit or representation fall below the applicable standard of care for the profession, in that the accountant failed to examine or acquire the necessary information required to support the accountant's professional opinion disseminated to potential investors, the opinion is made without a reasonable ground for believing it to be true"); Cty. of Orange v. Tata Consultancy Servs. Ltd., No. SACV1300683JLSJCX, 2016 WL 6542728, at *7-8 (C.D. Cal. Apr. 1, 2016) (finding triable issues of fact regarding allegedly fraudulent statements made during RFP process).

nThrive also argues that Scripps Health's claims for fraud and negligent misrepresentation are barred by the economic loss doctrine.  (Doc. No. 116 at 21.)  The problem with this argument is that the purported fraudulent representations or omissions at issue were made during the RFP process and, thus, occurred prior to Scripps Health and nThrive entering into the 2017 amendment.  Thus, the economic loss doctrine would not apply under these circumstances.  See, e.g., Cabebe v. Nissan of N. Am., Inc., No. 18-CV-00144-WHO, 2018 WL 5617732, at *9 (N.D. Cal. Oct. 26, 2018) ("This conduct precedes any contract between Nissan and McCullough and McCullough's fraudulent omission claim and UTPCPL claim are not barred by the economic loss doctrine."); see also Erlich v. Menezes, 21 Cal. 4th 543, 551–52 (1999) (explaining that the economic loss doctrine does not apply and "tort damages have been permitted in contract cases . . . where the contract was fraudulently induced" (citing Las Palmas Assocs. v. Las Palmas Ctr. Assocs., 235 Cal. App. 3d 1220, 1238 (1991))); Tata Consultancy, 2016 WL 6542728, at *7 ("[T]he

---

[4]      The Court rejects nThrive's assertion that based on the evidence in the record, no reasonable jury could find that nThrive had superior knowledge than Scripps Health about the collectability of the inventory.  (See Doc. No. 116 at 20.)  As nThrive itself asserts, it is a Revenue Cycle Management vendor that was recognized as "Best in [C]las[s]" in 2016.  (Id. at 5.)  Scripps Health is a non-profit health care system.  (Doc. No. 132-1, Thomas Decl. ¶ 2.)

California Supreme Court has repeatedly affirmed that the economic loss doctrine is not a bar to properly pled claims for fraudulent inducement.").

Finally, nThrive argues that Scripps Health's claims for fraud and negligent misrepresentation fail because there is no triable issue of fact as to damages. (Doc. No. 116 at 19.) The Court denied Defendants' motion for summary judgment on the issue of damages. See supra. In sum, the Court declines to grant summary judgment of Scripps Health's claims for fraud and negligent misrepresentation.[5]

### C.    Scripps Health's Claim for Aiding and Abetting Fraud

Formativ moves for summary judgement of Scripps Health's claim for aiding and abetting fraud. (Doc. No. 98 at 5-6.) Formativ argues that the failure of Scripps Health's claim for fraud is fatal to Scripps Health's claim for aiding and abetting fraud against Formativ. (Id. at 5.) See Nasrawi v. Buck Consultants LLC, 231 Cal. App. 4th 328, 344 n.7 (2014) ("[T]here can be no aiding and abetting liability absent the commission of an underlying tort."). But the Court denied summary judgment of Scripps Health's fraud claim. See supra. As such, the Court rejects this argument as a basis for summary judgment of Scripps Health's claim for aiding and abetting fraud.

Formativ also argues that Scripps Health's aiding and abetting claim should be dismissed because there is no evidence showing that Formativ knew another's conduct

---

[5]    Defendants argue that Scripps Health's claim for conspiracy to commit fraud fails because it is also barred by the economic loss doctrine. (Doc. No. 116 at 21.) Because the Court rejects Defendants' economic loss doctrine argument with respect to Scripps Health's fraud claim, see supra, the Court also rejects this argument for summary judgment of Scripps Health's claim for conspiracy to commit fraud.

On reply, Formativ argues for the first time that the Court should grant summary judgment of Scripps Health's claim for conspiracy to commit fraud because there is no evidence of a conspiracy. (Doc. No. 149 at 7.) This specific basis for summary judgment of this claim was never set forth in nThrive's motion for summary judgment or Formativ's notice of joinder to nThrive's motion for summary judgment. (See generally Doc. No. 116; Doc. No. 98.) Generally, courts decline to consider arguments raised for the first time in a reply brief. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("[A] district court need not consider arguments raised for the first time in a reply brief."); see also Graves v. Arpaio, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."). As such, the Court declines to consider this additional basis for summary judgment of Scripps Health's claim for conspiracy to commit fraud.

constituted a breach of a duty and provided substantial assistance to accomplish the tort. (Doc. No. 98 at 5-6; Doc. No. 149 at 7-8.)  Under California law, "'[l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." Casey v. U.S. Bank Nat. Assn., 127 Cal. App. 4th 1138, 1144 (2005); accord Navarrete v. Meyer, 237 Cal. App. 4th 1276, 1287 n.3 (2015).  "[L]iability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." Casey, 127 Cal. App. 4th at 1145.  But "[m]ere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 879 (2007).

In response, Scripps Health argues that there is sufficient evidence in the record showing that Formativ was integrally involved with nThrive during the RFP process when the purportedly fraudulent representations occurred.  (Doc. No. 134 at 8.)  The Court agrees that there is a triable issue of fact as to Scripps Health's claim for aiding and abetting fraud. As such, the Court declines to grant summary judgment of Scripps Health's claim for aiding and abetting fraud.

D.  Scripps Health's Claim for Intentional Interference with Contractual Relations

Formativ moves for summary judgement of Scripps Health's claim for intentional interference with contractual relations.  (Doc. No. 98 at 7-8.)  The elements of a claim for intentional interference with contractual relations are: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004).  "[C]onsistent with its

underlying policy of protecting the expectations of contracting parties against frustration by outsiders who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with a contract does not lie against a party to the contract." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 514 (1994).

Formativ argues that Scripps Health's claim for intentional interference fails as a matter of law because Formativ was not a stranger to the contract at issue. (Doc. No. 98 at 6-7.) To support this argument, Formativ cites to the California Supreme Court's decision in Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503 (1994). In Applied Equipment, the California Supreme Court stated: "consistent with its underlying policy of protecting the expectations of contracting parties against frustration by outsiders who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with a contract does not lie against a party to the contract." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 514 (1994). But Formativ does not contend that it is a party to the contract at issue. Indeed, Formative concedes that it was "not a signatory to the contract between Scripps and nThrive." (Doc. No. 98 at 7.) Thus, Formativ's reliance on Applied Equipment is misplaced. See also United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc., 766 F.3d 1002, 1008 (9th Cir. 2014) ("California courts have repeatedly held that parties with an economic interest in a contractual relationship may be liable for intentional interference with that contract.").

Formativ also cites to several district court decisions holding that: "Only a stranger to the contract, not an interested party whose performance is required under the contract, may be held liable for interfering with it." Hamilton San Diego Apartments v. RBC Cap. Markets Corp., No. 312CV2259JMBLM, 2013 WL 12090313, at *2 (S.D. Cal. Mar. 5, 2013) (citing Maritz Inc. v. Carlson Mktg. Grp., Inc., No. C 07-05585 JSW, 2009 WL 3561521, at *4 (N.D. Cal. Oct. 30, 2009)); see Synergy Project Mgmt., Inc. v. City & Cty. of San Francisco, No. 17-CV-06763-JST, 2018 WL 2234596, at *4 (N.D. Cal. May 16, 2018). (See Doc. No. 98 at 7.) Even assuming this is a correct statement of California law,

cf. Synergy, 2018 WL 2234596, at *4 ("'[t]he case law on who is considered to be a stranger to a contract is quite muddled'"), this is no help to Formativ.  Formativ does not identify any language in the contract at issue between Scripps Health and nThrive that expressly requires Formativ's performance.  As such, Formativ's reliance on these cases is also misplaced.

Formativ also argues that Scripps Health's claim for intentional interference with contractual relations fails because Scripps has no evidence that Formativ intentionally acted to induce a break or disruption of the contract.  (Doc. No. 98.)  In response, Scripps Health argues that there is sufficient evidence in the record from which it can be inferred that Formativ knowingly interjected itself into the contractual relationship between Scripps Health and nThrive.  (Doc. No. 134 at 8.)  The evidence in the record is sufficient to create triable issues of fact as to Scripps Health's claim for intentional interference with contractual relations.  In sum, the Court declines to grant summary judgment of Scripps Health's claim for intentional interference with contractual relations.

E.     Scripps Health's Claim for Intentional Interference with Economic Advantage

Defendants move for summary judgment of Scripps Health's claim for intentional interference with prospective economic advantage.  (Doc. No. 116 at 22.)  The elements of the tort of intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003) (internal quotation marks and citations omitted).  "[A] plaintiff alleging business interference must also plead and prove that the defendant's interference was wrongful by some measure beyond the fact of the interference itself." Popescu v. Apple Inc., 1 Cal. App. 5th 39, 63 (2016) (quoting Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393 (1995)).  "[A]n act is independently wrongful if it is

14

unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Korea Supply, 29 Cal. 4th at 1159.

Defendants argue that Scripps Health's claim fails as a matter of law because a breach of contract cannot serve as a predicate for an interference claim. (Doc. No. 116 at 22; Doc. No. 144 at 10.) In response, Scripps Health argues that Defendants' argument is flawed because Scripps Health's economic interference claim is not solely based on nThrive's alleged breach of the contract at issue. (Doc. No. 139 at 21.) The Court agrees with Scripps Health. Scripps Health's claim for intentional interference with a prospective economic advantage is based in part on its assertion that nThrive engaged in fraud. (See Doc. No. 1, Compl. ¶ 99.) Scripps Health's assertion of fraud is separate and apart from its breach of contract claim and is not barred by the economic loss doctrine. See supra. As such, the Court rejects Defendants' argument.

Defendants also argue that this claim fails because Scripps Health has not identified any economic loss it has suffered between itself and a third party. (Doc. No. 116 at 22.) This argument has no merit. In this action, Scripps Health contends that Defendants damaged Scripps Health's ability to properly collect on the accounts receivables owed to it by third parties. (See Doc. No. 139 at 24-25.) In sum, the Court declines to grant summary judgment of Scripps Health's claim for intentional interference with prospective economic advantage.

F.   Scripps Health's Claim for Negligence

Defendants argue that Scripps Health's claim for negligence fails as a matter of law because Scripps Health has failed to identify any duty owed or breached by Defendants beyond the contract between Scripps Health and nThrive. (Doc. No. 116 at 23; Doc. No. 149 at 9.) In response, Scripps Health argues that Defendants' argument fails because a professional standard of care can be established by accepted industry practice, and it has presented evidence showing that Defendants' performance fell below the applicable industry standards. (Doc. No. 139 at 22.)

In California, "a plaintiff in a negligence suit must demonstrate a legal duty to use

due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." <u>Vasilenko v. Grace Fam. Church</u>, 3 Cal. 5th 1077, 1083 (2017).  "The existence of a duty is a question of law." <u>Vasilenko</u>, 3 Cal. 5th at 1083.

"'Professional negligence' is one type of negligence, to which general negligence principles apply." <u>Delaney v. Baker</u>, 20 Cal. 4th 23, 31 (1999).  "To state a cause of action for professional negligence, a party must show '(1) the duty of the professional to use such skill, prudence and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence.'" <u>Giacometti v. Aulla, LLC</u>, 187 Cal. App. 4th 1133, 1137 (2010) (quoting <u>Nichols v. Keller</u>, 15 Cal. App. 4th 1672, 1682 (1993)).  "The general rule is that privity of contract is a requisite to a professional negligence claim." <u>Id.</u>

It is undisputed that Scripps Health and nThrive entered into a contract.  (<u>See</u> Doc. No. 124-4, Exs. 3, 4.)  Thus, there is privity of contract between Scripps Health and nThrive.  To support its negligence claim, Scripps Health has introduced declarations from its experts opining that nThrive's performance failed to adhere to healthcare RCM industry standards.  (Doc. No. 139 at 22 (citing Doc. No. 127-6, Farber Decl. 9(a)-(d); Doc. No.127-7, Cobuzzi Decl. 16-23).)  This is sufficient to create a triable issue of fact as to Scripps Health's negligence claim against nThrive.[6]

Scripps Health has not shown that there is privity of contract between itself and Formativ.  (<u>See</u> Doc. No. 98 at 7; Doc. No. 134 at 6.)  Cf. <u>Sehulster Tunnels/Pre-Con v.</u>

---

[6]    Defendants also argue that Scripps Health's negligence claim is barred by the economic loss doctrine.  (Doc. No. 98 at 7-8; Doc. No. 116 at 23.)  Under that doctrine, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." <u>Aas v. Superior Ct.</u>, 24 Cal. 4th 627, 643 (2000).  But Scripps Health's negligence is claim is not based on the obligations set forth in its agreement with nThrive, it is based on its assertion that nThrive owed it a duty to adhere to healthcare RCM industry standards and nThrive breached that duty.  <u>See also</u> <u>EduMoz, LLC v. Republic of Mozambique</u>, No. CV1302309MMMCWX, 2015 WL 13697385, at *11 (C.D. Cal. Apr. 20, 2015) ("'[T]he economic loss rule does not apply when the contract alleged to be negligently performed relates to the performance of services.'" (citing <u>N. Am. Chem. Co. v. Superior Ct.</u>, 59 Cal. App. 4th 764, 780 (1997))).

Traylor Bros./Obayashi Corp., 111 Cal. App. 4th 1328, 1348 (2003) (finding no privity of contract between subcontractor and project owner). Nevertheless, under California law, a defendant can be held liable for negligence to a third person not in privity under certain circumstances. See Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958). The California Supreme Court has explained:

> The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

Id. at 650; accord S. California Gas Leak Cases, 7 Cal. 5th 391, 401 (2019). "Deciding whether to impose a duty of care turns on a careful consideration of the "'the sum total'" of the policy considerations at play, not a mere tallying of some finite, one-size-fits-all set of factors." S. California Gas Leak Cases, 7 Cal. 5th at 401. In light of the relevant factors, the evidence in the record is sufficient to create a triable issue of fact as to Scripps Health's negligence claim against Formativ. In sum, the Court declines to grant summary judgment of Scripps Health's negligence claim.

      G.    Scripps Health's Claim for Unjust Enrichment

Defendants argue that Scripps Health's claim for unjust enrichment fails as a matter of law because Scripps Health has never paid Defendants for the services they performed and cannot identify any other benefit conferred. (Doc. No. 116 at 23.) Defendants argue, thus, Scripps Health could not have been unjustly enriched as a matter of law.

"The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008) (quoting Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000)); see also Ghirardo v. Antonioli, 14 Cal. 4th 39, 51 (1996) ("A person is enriched if he receives a benefit at another's expense."). "The term 'benefit' 'denotes any

17

form of advantage.'" <u>Ghirardo</u>, 14 Cal. 4th at 51.

In response to Defendants' motion, Scripps Health does not dispute Defendants' assertion that it has never paid Defendants for any of the services they have performed. (<u>See</u> Doc. No. 139 at 22.)  Rather, Scripps Health asserts that its unjust enrichment is viable because it is premised on nThrive's active demand for payment on its invoices.  (<u>Id.</u>)  This is insufficient to support a claim for unjust enrichment.  A necessary element of a claim for unjust enrichment is the receipt of a benefit.  <u>See</u> <u>Peterson</u>, 164 Cal. App. 4th at 1593.  It is undisputed that Defendants have not received any payment or other benefit from Scripps Health.  (<u>See</u> Doc. No. 116 at 23; Doc. No. 139 at 22.)  An active demand for a benefit is not the same as the receipt of a benefit.  As such, the Court grants summary judgment of Scripps Health's claim for unjust enrichment.

### H.   Scripps Health's Claim for Accounting

Defendants argue that Scripps Health's claim for accounting fails as a matter of law because there is nothing for Defendants to account to Scripps Health.  (Doc. No. 116 at 23.)  "An action for an accounting has two elements: (1) 'that a relationship exists between the plaintiff and defendant that requires an accounting' and (2) 'that some balance is due the plaintiff that can only be ascertained by an accounting.'" <u>Sass v. Cohen</u>, 10 Cal. 5th 861, 869 (2020).   "The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to surrender." <u>Teselle v. McLoughlin</u>, 173 Cal. App. 4th 156, 179–80 (2009).

"An action for an accounting has been characterized as 'a means of discovery.'" <u>Sass</u>, 10 Cal. 5th at 869.  "[T]he defendant in an accounting action possesses information unknown to the plaintiff that is relevant for the computation of money owed."  <u>Id.</u>

With respect to its claim for accounting, Scripps Health asserts that it needs corrected invoicing information from Defendants.  (Doc. No. 132 at 23 (citing Doc. No. 132-20, Ex. 58).)  This evidence is sufficient to raise a cognizable claim for accounting.  As such, the Court declines to grant summary judgment of Scripps Health's claim for accounting.

1         I.    <u>Scripps Health's Claim for Violation of the UCL</u>

2         Defendants argue that Scripps Health's UCL claim fails as a matter of law because

3   Scripps Health lacks standing under the UCL.  (Doc. No. 116 at 24.)  In order to establish

4   standing under the UCL, the plaintiff must "must '(1) establish a loss or deprivation of

5   money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show

6   that that economic injury was the result of, i.e., caused by, the unfair business practice or

7   false advertising that is the gravamen of the claim.'"  <u>Veera v. Banana Republic, LLC</u>, 6

8   Cal. App. 5th 907, 916 (2016) (quoting <u>Kwikset Corp. v. Superior Ct.</u>, 51 Cal. 4th 310, 320

9   (2011)).  A plaintiff suffers an injury in fact for purposes of standing under the UCL, when

10  he has: "(1) expended money due to the defendant's acts of unfair competition;" "(2) lost

11  money or property;" or "(3) been denied money to which he or she has a cognizable claim."

12  <u>Hall v. Time Inc.</u>, 158 Cal. App. 4th 847, 854 (2008).  But this list "is not exhaustive and

13  the notion of 'lost money' under the UCL is not limited."  <u>L. Offs. of Mathew Higbee v.</u>

14  <u>Expungement Assistance Servs.</u>, 214 Cal. App. 4th 544, 561 (2013).

15        Defendants argue that Scripps Health lacks standing under the UCL because Scripps

16  Health cannot demonstrate any economic injury.  (Doc. No. 116 at 24.)  This contention is

17  based on Defendants' assertion that Scripps Health cannot establish any damages in this

18  action as a matter of law.  The Court denied Defendants' motion for summary judgment on

19  the issue of Scripps Health's damages.  <u>See</u> <u>supra</u>.  As such, Defendants' arguments

20  regarding standing under the UCL fail.  <u>See also</u> <u>Luxul Tech. Inc. v. Nectarlux, LLC</u>, 78

21  F. Supp. 3d 1156, 1173–74 (N.D. Cal. 2015) (finding allegations of lost customers and

22  revenue sufficient to confer UCL standing); <u>Gonzales & Gonzales Bonds & Ins. Agency,</u>

23  <u>Inc. v. Action Immigr. Bonds & Ins. Servs., Inc.</u>, No. CV 13-6997 PA (MRWX), 2014 WL

24  12600146, at *8 (C.D. Cal. Mar. 24, 2014) (finding allegations of lost profits and business

25  sufficient to confer UCL standing).

26        Defendants also argue that Scripps Health cannot satisfy the unlawful prong or the

27  unfair prong of the UCL.  (Doc. No. 116 at 24-25.)  In response, Scripps Health clarifies

28  that its UCL claim is premised only on the fraudulent prong.  (Doc. No. 139 at 23.)  With

this clarification, Defendants' arguments regarding the unlawful prong and the unfair prong are irrelevant.  Cf. Buller v. Sutter Health, 160 Cal. App. 4th 981, 986 (2008) ("'Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered unfair competition under the UCL.'").

Defendants argue that Scripps Health cannot satisfy the fraudulent prong of the UCL because its claim for fraud fails as a matter of law.  (Doc. No. 116 at 25.)  The Court denied summary judgment of Scripps Health's fraud claim.  See supra.  As such, the Court declines to grant summary judgment of Scripps Health's claim for violation of the UCL.

J.    nThrive's Counterclaim for Breach of Contract

Scripps Health moves for summary judgment of nThrive's counterclaim for breach of contract.  (Doc. No. 107-1 at 17-20.)  Scripps Health argues that nThrive's breach of contract counterclaim fails as a matter of law because nThrive cannot satisfy the "performance" element of this claim.  (Id. at 17-19.)

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).  "'[A] plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance.'"  Plotnik v. Meihaus, 208 Cal. App. 4th 1590, 1602 (2012).  This is because "'a material breach excuses further performance by the innocent party.'"  Id.; see Brown v. Grimes, 192 Cal. App. 4th 265, 277 (2011) ("When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract.").  "'Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact.'" Plotnik, 208 Cal. App. 4th at 1602–03; accord Brown, 192 Cal. App. 4th at 277; see also Schellinger Bros. v. Cotter, 2 Cal. App. 5th 984, 1002 (2016) ("Whether a breach is material is usually left to the trier of fact 'to determine from all the facts and circumstances

shown in evidence.'").

Scripps Health argues that it is entitled to summary judgment of nThrive's breach of contract counterclaim because the evidence in the record shows that nThrive failed to perform at least nine of its obligations under the contract. (Doc. No. 107-1 at 18.)  But the problem with this argument is that in order to be entitled to summary judgment of this claim on this ground, Scripps Health must not only show that it is undisputed that nThrive breached the contract at issue, Scripps Health must also show that it is undisputed that the breach was material.  See Plotnik, 208 Cal. App. 4th at 1602; Brown, 192 Cal. App. 4th at 277.

For example, in support of its arguments, Scripps Health primarily relies on its contention that nThrive breached the contract at issue by breaching Section 11.24 of the 2011 master agreement and Section 5.1 of the 2017 amendment. (Doc. No. 107-1 at 18-19; Doc. No. 140 at 2-3.)  Section 11.24 of the 2011 master agreement provides: "[nThrive] shall not assign this Agreement without Scripps's consent, except that it may freely assign it to MedAssets, Inc. as the parent entity, or any other subsidiary of MedAssets, Inc., or as part of a change of control transaction." (Doc. No. 124-4, Ex. 4 at 9 § 11.24.)  Section 5.1 of the 2017 amendment is entitled "A/R Services Obligations of nThrive" and provides that "nThrive shall" perform certain obligations. (Doc. No. 124-4, Ex. 3 at 3-4, § 5.1.)

Scripps Health argues that nThrive violated these provisions in the agreement by assigning the agreement to Formativ. (Doc. No. 107-1 at 11, 18-19.)  But Scripps Health has not shown that the agreement between nThrive and Formativ violates those provisions as a matter of law.  The 2017 amendment contains a business associate agreement containing a section entitled "Business Associate's [(i.e., nThrive's)] Subcontractors and Agents." (Doc. No. 124-4, Ex. 3 at Schedule 1 at p.2.)  Further, the nThrive-Formativ agreement at issue is entitled "Second Amendment to the Subcontracting Agreement Between Formativ Health and nThrive Revenue Systems, LLC" and provides "Formativ Health ('Subcontractor') and nThrive Revenue Systems, LLC ('nThrive') entered into an agreement to facilitate the use of the Subcontractor Services to nThrive Customers dated

December 13, 2016."[7]  (Doc. No. 107-3, Ex. 7 at 1.)

Moreover, even assuming Scripps Health could prove that nThrive breached section 11.24 of the 2011 master agreement as a matter of law, whether that breach is material would still be a matter "left to the trier of fact 'to determine from all the facts and circumstances shown in evidence.'"  Schellinger Bros., 2 Cal. App. 5th at 1002.  In particular, given that there is evidence in the record from which a reasonable jury could infer that Scripps Health knew Formativ would perform work on the project prior to Scripps Health entering into the 2017 amendment.  (See, e.g., Doc. No. 116-3, Ex. 1 at 84-85; Doc. No. 95-3, Ex. 13 at 189-90, Ex. 24 at p.6, Ex. 38, Ex. 39.)  The Court may not weigh evidence at the summary judgment stage based on the record in this case.

Scripps Health also argues that nThrive's counterclaim for breach of contract fails as a matter of law because nThrive has failed to present evidence of ascertainable, non-speculative damages.  (Doc. No. 107-1 at 19-20.)  "The statutory measure of damages for breach of contract is 'the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.'"  Copenbarger v. Morris Cerullo World Evangelism, Inc., 29 Cal. App. 5th 1, 9 (2018) (citing Cal. Civ. Code § 3300).  "Contract damages seek to approximate the agreed-upon performance.  [I]n the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance."  Id.

California Civil Code § 3301 provides: "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."  See also Buttram v. Owens-Corning Fiberglas Corp., 16 Cal. 4th 520, 531 (1997) ("[T]o be

---

[7]    The Court is not persuaded by Scripps Health's attempted reliance on Higgins v. Monckton, 28 Cal. App. 2d 723, 728 (1938), and Reed v. S. Shore Foods, Inc., 229 Cal. App. 2d 705, 710 (1964).  Those are both cases involving real property rights.  See Higgins, 28 Cal. App. 2d at 726; Reed, 229 Cal. App. 2d at 710.  As Scripps Health asserts, this situation involves a transfer of "contract rights," not real property rights.  (Doc. No. 140 at 2.)  Scripps Health has failed to show that its case law involving real property rights is applicable to situations involving contract rights.

actionable, harm must constitute something more than nominal damages, speculative harm, or the threat of future harm-not yet realized." (internal quotation marks omitted)). "Damages which are remote, contingent, or merely possible cannot serve as a legal basis for recovery." Copenbarger, 29 Cal. App. 5th at 11. "The plaintiff in a breach of contract action has the burden of proving nonspeculative damages with reasonable certainty." Id.

The contract at issue provides in a section entitled "Fees" that: "[f]or all Referred Accounts, nThrive shall receive 12.75% of Collections as a result of nThrive efforts; [and] $6 per claim flat rate for any other claim touches required of nThrive that will not result in payment." (Doc. No. 124-4, Ex. 3 at 3, § 4(i)-(ii)). nThrive cites to a report from its expert opining and calculating that based on the records produced by Scripps Health in this case, including each claim that Defendants touched and each payment that occurred following a touch, nThrive is due $784,234.01.[8] (Doc. No. 124-4, Ex. 55 at 22.) This is sufficient to create a triable issue of fact as to the damages element of nThrive's breach of contract counterclaim. In sum, the Court declines to grant summary judgment of nThrive's counterclaim for breach of contract.

K.    nThrive's Counterclaim for Breach of the Covenant of Good Faith and Fair Dealing

Scripps Health moves for summary judgment of nThrive's counterclaim for breach of the covenant of good faith and fair dealing. (Doc. No. 107-1 at 20-23.) Under California law, every contract "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 796 (2008) (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371–72 (1992)). This "covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." Waller v. Truck Ins. Exch., Inc., 11 Cal.

---

[8]    Scripps Health argues that the Ms. Kohler's opinions regarding damages are insufficient to create a genuine issue of fact because her opinions are inadmissible under Daubert. (Doc. No. 140 at 5-6.) The Court denied Scripps Health's Daubert motion to exclude Ms. Kohler's opinions. (Doc. No. 162.)

4th 1, 36 (1995), <u>as modified on denial of reh'g</u> (Oct. 26, 1995).  "Or, to put it another way, the 'implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose.'"  <u>Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.</u>, 90 Cal. App. 4th 335, 345 (2001), <u>as modified on denial of reh'g</u> (July 30, 2001) (quoting <u>Schoolcraft v. Ross</u>, 81 Cal. App. 3d 75, 80 (1978)).

Scripps Health argues that nThrive's counterclaim for breach of the covenant of good faith and fair dealing fails as a matter of law because it is duplicative of its breach of contract counterclaim.  (Doc. No. 107-1 at 20-22.)  "A breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself."  <u>Careau & Co. v. Sec. Pac. Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1394 (1990).

nThrive disputes Scripps Health's characterization of its counterclaim for breach of the covenant of good faith and fair dealing.  nThrive explains that its breach of contract claim rests on Scripps Health's purported failure to pay for the services rendered.  (Doc. No. 137 at 20.)  nThrive further explains that its breach of the covenant of good faith and fair dealing claim instead rests on Scripps Health's purported conduct that frustrated Defendants' ability to recover more from the Legacy accounts receivables.  (<u>Id.</u>)  Specifically, nThrive asserts that Scripps Health frustrated its ability to benefit from the contract by, among other things, retaining responsibility for the most lucrative portion of the Legacy accounts receivables.  (<u>Id.</u> at 21.)

In response, Scripps Health argues that the implied covenant of good faith and fair dealing cannot be read to require a defendant to take a particular action that is discretionary under the contract.  (Doc. No. 140 at 6 (citing <u>Bevis v. Terrace View Partners, LP</u>, 33 Cal. App. 5th 230, 256 (2019)).  Although this is an accurate statement of the law, this is unhelpful to Scripps Health at this stage in the proceedings.  Scripps Health has not show that the terms of the contract unambiguously confer Scripps Health with unfettered

24

discretion to assign its Legacy accounts receivables.[9]  As a result, nThrive has shown that triable issues of fact exist with respect to its counterclaim for breach of the implied covenant of good faith and fair dealing.

Scripps Health also argues that nThrive's counterclaim for breach of the covenant of good faith and fair dealing fails because nThrive must establish its performance of the underlying contract.  (Doc. No. 107-1 at 22-23.)  Scripps Health argues that for the same reason as with respect to its breach of contract counterclaim, nThrive cannot establish its performance of the contract as a matter of law.  (Id.)  The Court declines to grant summary judgment of nThrive's counterclaim for breach of contract on this basis.  Triable questions of fact remain as to whether nThrive materially breached the contract at issue.  In sum, the Court declines to grant summary judgment of nThrive's counterclaim for breach of the covenant of good faith and fair dealing.

L.    nThrive's Counterclaim for Unjust Enrichment

Scripps Health argues that nThrive's counterclaim for unjust enrichment fails as a matter of law because nThrive claims to be parties to a valid contract between itself and Scripps Health.  (Doc. No. 107-1 at 24-25.)  Scripps Health explains under California law, a claim for unjust enrichment cannot lie where there is a valid express contract between the parties.  (Id.)  In response, nThrive agrees that to the extent it prevails on its counterclaim for breach of contract, it cannot also prevail on its counterclaim for unjust enrichment.  (Doc. No. 137 at 22.)  nThrive argues, nevertheless, that summary judgment of its unjust

---

[9]    The Court notes that the contractual language relied on by Scripps Health to support this argument is different from the language that was at issue in the Bevis case relied on by Scripps Health.  Bevis involved language that expressly gave the defendant landlord a choice between two alternative options. See Bevis, 33 Cal. App. 5th at 256 ("Paragraph 11.3 expressly gave defendants the right to either require assignment of the lease to a buyer of a home in the park or to terminate the lease and enter into a new lease agreement with the buyer.").  In contrast, the language in the contract in this action that Scripps Health attempts to rely on is language defining the term "Referred Accounts" as "all accounts placed or designated by Client for nThrive's collection."  (Doc. No. 124-4, Ex. 3 at 3, § 3.)  Although this provision contains language stating that Client Scripps Health will place or designate accounts for nThrive's collection, it does not contain express language providing Scripps Health with an alternative option from doing so.

1  enrichment counterclaim is inappropriate at this time because it may inconsistently plead
2  the two counterclaims at this stage in the proceedings.  (Id. at 22-23.)

3      California courts have explained that "'[a]n action based on an implied-in-fact or
4  quasi-contract cannot lie where there exists between the parties a valid express contract
5  covering the same subject matter.'"  Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal.
6  App. 4th 221, 231 (2014) (quoting Lance Camper Mfg. Corp. v. Republic Indem. Co., 44
7  Cal. App. 4th 194, 203 (1996)).  Nevertheless, California courts have also explained: "a
8  party to an express contract can assert a claim for restitution based on unjust enrichment
9  by 'alleg[ing in that cause of action] that the express contract is void or was rescinded.'  A
10  claim for restitution is permitted even if the party inconsistently pleads a breach of contract
11  claim that alleges the existence of an enforceable agreement."  Id. (citations omitted); see
12  also Longest v. Green Tree Servicing LLC, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015)
13  ("Rule 8(d) of the Federal Rules of Civil Procedure expressly permits a plaintiff to plead
14  claims in the alternative.").  Because nThrive may plead its counterclaim for breach of
15  contract and its counterclaim for unjust enrichment in the alternative at this stage in the
16  proceedings, the Court rejects Scripps Health's argument for summary judgment of
17  nThrive's unjust enrichment counterclaim.  See In re Facebook, Inc., Consumer Priv. User
18  Profile Litig., 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) ("The plaintiffs are permitted to
19  plead claims for breach of contract and unjust enrichment in the alternative.").

20      Scripps Health also argues that nThrive's counterclaim for unjust enrichment fails
21  as a matter of law because any fees were supposed to pass through to Formativ.  (Doc. No,
22  107-1 at 24; Doc. No. 140 at 8.)  Scripps Health fails to provide the Court with any authority
23  holding that an unjust enrichment claim fails simply because the claimant might later pass
24  on an award to a different party.[10]  As such, the Court rejects this argument, and the Court

25  _____

26  [10]     Scripps Health's citation to Casden Builders Inc. v. Entre Prises USA, Inc., No. CV 10-2353
ODW, 2010 WL 2889496 (C.D. Cal. July 21, 2010), is not persuasive.  Scripps Health contends that in
27  order to have a legally viable unjust enrichment claim, the claimant must show that "it encountered some
detriment, separate from showing any alleged benefit to" the defendant.  (Doc. No. 140 at 8 (citing Casden
28  Builders, 2010 WL 2889496, at *7).)  In the cited passage, Casden Builders cites to another district court

1   declines to grant summary judgment of nThrive's counterclaim for unjust enrichment.

## Conclusion

For the reasons stated, the Court grants in part and denies in part Defendants' motion for summary judgment.  Specifically, the Court grants Defendants summary judgment against Plaintiff Scripps Health's claim for unjust enrichment, and the Court denies the remainder of Defendants' motion for summary judgment.  Additionally, the Court denies Plaintiff Scripps Health's motion for summary judgment in its entirety.

**IT IS SO ORDERED.**

DATED: May 18, 2021

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

opinion, Hands on Video Relay Servs., Inc. v. Am. Sign Language Servs. Corp., No. CIV. S-09-996 LKK, 2009 WL 8691614, at *14 (E.D. Cal. Aug. 12, 2009), which states: "When one party receives a benefit from another or at the other's detriment, and it would be unjust for the former party to retain the benefit, unjust enrichment may cause the benefit to be conveyed to the aggrieved party."  Hands on, 2009 WL 8691614, at *14.  To support this statement of law, the Hands on court cites to the California Court of Appeal's decision in Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008).  The Peterson court never uses the word "detriment" when describing the elements of a claim for unjust enrichment.  See 164 Cal. App. 4th at 1593.  Rather, the Peterson court states: "The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'"  Id.